

**U.S. Department of Justice**

August 11, 2026

<u>By ECF</u>

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Gautam S. Adani et al.
            <u>Criminal Docket No. 24-433 (NGG)</u>

I write in response to the Court's Order dated August 10, 2026, in which the Court granted the Government's unopposed Rule 48(a) motion to dismiss certain counts in the above-captioned case but reserved judgment as to others pending further response from the Government.

At the outset, I correct an important factual misimpression that appears throughout the Court's Order—i.e., that I "eschewed the professional opinions of innumerable officials from various federal offices and replaced them with [my] singular judgment," and that I "came to this decision largely in collaboration with defense counsel, and seemingly without input from the FBI and SEC agents who investigated the alleged misconduct, or the attorneys from the Department, SEC and U.S. Attorney's Office who brought the case." Dkt. 49, at 45.

The notion that I "eschew[ed]" the professional opinions of others is demonstrably incorrect. As I said in my initial letter, I consulted at length with attorneys in the Department, and my ultimate decision reflected the input and advice I received from them. The SEC is a separate regulatory body that does not have "agents" and was not part of the criminal prosecution team; it instead conducted a separate, parallel investigation, making it inappropriate for the SEC to make prosecutorial decisions. But I did consult attorneys at the SEC about their assessment of the legal merits of their civil claims, and about the resolution they were seeking with some of the defendants. My discussions with defense counsel were the sort of presentations and arguments that defense counsel regularly make to members of the Department when advocating for their clients, and those presentations were attended by attorneys from the U.S. Attorney's Office (including Mr. Nocella, who submitted a sworn statement confirming as much), the Criminal Division, and other attorneys from the Office of the Deputy Attorney General. Such "appeals" to the Office of the Deputy Attorney General are quite common across all Administrations. But ultimately there must be a final decisionmaker, and that is why I emphasized that the ultimate decision was mine alone.

1

The Court correctly recognized that the Government's motion to seek dismissal of the indictment was not based on the purported promise that received significant press attention, and the Court further agreed that "the reasons for dismissal enumerated [in my letter of July 4, 2026] are the real reasons for [my] decision to dismiss the Indictment." Dkt. 49, at 22. Each of those reasons was exactly the sort of consideration that prosecutors are tasked with evaluating when deciding whether to bring or dismiss charges, including the strength of the evidence, policy priorities, victim interests, and the appropriate allocation of resources.[1] Although the Court disagreed with a number of my stated reasons, the Court agreed that those were in fact the real reasons for seeking dismissal. Further, those considerations—such as the fact that India had a stronger interest in evaluating the alleged misconduct, that there are no victim interests to vindicate, and that the defendants have no immediate prospect of facing arrest and thus will remain in the unfair position of having these charges hanging over them while the Government will have to spend considerable resources maintaining the evidence and case knowledge in the event the case is ever tried—are precisely the sort of interests that prosecutors are required to consider. The Court may have made different prosecutorial decisions were it in the Government's position, but that is not a basis to reject any reason for seeking dismissal. I urge the Court to reconsider its rejection of those reasons.

With respect to the FCPA charges in particular, the Court rightfully did not express any doubt about the genuineness of my belief that the charges should be dismissed under the Blanche Memorandum, but the Court appears to question whether I correctly applied the memo. The memo is not a law or regulation to be interpreted by a court. It instead is an expression of a policy that the Department is tasked with carrying out. The memo sets forth the rubric for evaluating where prosecutors should prioritize their resources. The Court may think that a "green energy" company in India could somehow implicate U.S. national security because of the critical role of energy infrastructure inside the U.S.—but that is not the view of this official charged with implementing the memo. The same can be said for the Court's speculation that the alleged bribes might have affected a U.S. company, despite no evidence that they did so—an approach that again is not shared by the deciding official and which would render the memo almost meaningless. Having reviewed the record, I saw no indication that this factor could be satisfied. And with respect to the fourth, catch-all factor, although the purported bribes were alleged to be a large dollar amount, that factor alone was not sufficient to bring it within the priorities of the memo, especially given the significant questions— discussed more below—about whether the payments were even "bribes" at all. But even if the Court believes the Blanche Memorandum should be applied in a different manner here, that was not the conclusion that I (an executive branch official charged with implementing the memo) reached.[2]

---

[1] Prosecutors should decline charges where "(1) the prosecution would serve no substantial federal interest; (2) the person is subject to effective prosecution in another jurisdiction; or (3) there exists an adequate non-criminal alternative to prosecution." Justice Manual 9-27.220. Further, "a determination to prosecute represents a policy judgment that the fundamental interests of society require the application of federal criminal law to a particular set of circumstances," including recognizing that "prosecution entails profound consequences for the accused, crime victims, and their families whether or not a conviction ultimately results." Justice Manual 9-27.001.

[2] The Court stated that "the Department did not move to dismiss these charges by the Executive Order's 180-day deadline to 'take appropriate action' in all existing FCPA cases." Dkt. 49, at 41. In my filings,

Further, as described in my July 4 letter (but never addressed by the Court's August 10 Order), it was "entirely unclear that the prosecution could prove that the alleged payments in this case were illegitimate bribes and not legitimate commercial transactions" because the "payments could be characterized as customer rebates, which are a common and acceptable commercial practice." Dkt. 37, at 8. The indictment's use of the conclusory term "bribe" shielded the fact that many of the suspect payments were made not to individuals but to the Indian government itself. The evidence of the actual nature of the payments raised substantial concerns about whether the FCPA charges could be proven beyond a reasonable doubt. I did not need to determine that such charges could *never* be proven. That is not the test for whether I should move to dismiss, nor for whether the Court should grant the Government's motion to dismiss.

With respect to the obstruction charges, I described them as "tagalong" because they are derivative of the FCPA charges, even if they include different elements, and they almost certainly would not have been charged absent the FCPA charges. A defendant can theoretically obstruct an investigation into a crime he did not commit, but the Government's interest in prosecuting such obstruction is greatly diminished, and the risk of juror confusion is heightened. And my evaluation of the evidence raised significant doubts in my mind that the Government would be able to prove the elements beyond a reasonable doubt, particularly with respect to intent. This was informed in part by the role counsel played in the underlying process, as explained in my July 4 letter, which was likely to yield an advice-of-counsel defense. My evaluation was that these charges did not warrant the considerable resources that would be required to further prosecute them. The Court may have chosen differently if it were a prosecutor, but that determination is reserved solely for the Government.

With this additional submission, the Court should promptly grant the remainder of the motion to dismiss. If the Court either denies that motion or declines to dismiss the remaining charges with prejudice by the end of the day on August 25, the Government intends to seek appellate relief to finally end this meritless case.

Respectfully submitted,

/s/
R. TRENT MCCOTTER
Acting Deputy Attorney General

cc:    Counsel of Record (by ECF)
Winston Paes (by E-mail)
Paul Schoeman (by E-mail)
Stephen Best (by E-mail)
Michael Kendall (by E-mail)
Iris Bennett & Patrick Linehan (by E-mail)

---

I have presented only my own views. Even if it would help me to do so, I will not reveal privileged deliberations by other Government attorneys regarding this case—something that cannot be said for the unethical Government attorney who anonymously leaked internal information to the media.